UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAWN WESENICK,

        Plaintiff,

v.                                                                     Case No. 16-C-990

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION

This is an action for review of the final decision of the Commissioner of Social Security denying Plaintiff Dawn Wesenick's application for disability and disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. §§ 401 *et seq.* For the reasons stated herein, the Commissioner's decision will be affirmed.

### BACKGROUND

Wesenick, currently age 48, resides with her husband and thirteen-year-old daughter in Wausau, Wisconsin. R. 94. Prior to 2006, Wesenick worked at a scissor company as a general laborer for fifteen years. R. 102. Wesenick initially applied for disability and disability insurance benefits on November 6, 2006, alleging disability beginning April 14, 2006. R. 143. She claimed she was disabled due to multiple sclerosis, osteomyelitis of the lumbar spine resolved, arthritis of the lumbar spine, obesity, and depressive and anxiety disorders. R. 146. Her application was denied initially and upon reconsideration. After these denials, Wesenick filed a request for an administrative hearing. Administrative Law Judge (ALJ) Wendy Weber held a hearing at which Wesenick, who

was represented by counsel, an impartial medical expert, and a vocational expert (VE) testified. R. 143. On January 21, 2010, ALJ Weber concluded Wesenick had the ability to perform light work after her closed period of disability from April 14, 2006 to April 15, 2007. R. 146–51.

Wesenick submitted a second application for disability and disability insurance benefits on November 6, 2012. R. 214. The Social Security Administration (SSA) denied Wesenick's second application on March 15, 2013. After her application and request for reconsideration were denied, she requested an administrative hearing. ALJ Ben Willner held a hearing on October 24, 2014. Both Wesenick, who was represented by counsel, and a VE testified at the hearing. R. 79–113.

In a decision dated January 20, 2015, ALJ Willner determined Wesenick was not disabled. R. 19–30. The ALJ concluded Wesenick met the insured status requirements and had not engaged in substantial gainful activity since October 17, 2011, her amended alleged onset date. R. 22. The ALJ found Wesenick had three severe impairments: degenerative disc disease, multiple sclerosis, and migraine headaches. At step three, the ALJ determined Wesenick's impairments did not meet or medically equal any listed impairments under 20 C.F.R. § 404, Subpart P, Appendix 1. R. 24. The ALJ concluded Wesenick had the following residual functional capacity (RFC):

> claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except: she could occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance, stoop kneel, crouch, and crawl; and should avoid all exposure to hazards.

*Id.* With these limitations, the ALJ found that Wesenick was unable to perform any past relevant work. R. 28. Nevertheless, the ALJ concluded Wesenick was not disabled within the meaning of the Social Security Act because there were jobs that existed in significant numbers in the national economy that she could perform. R. 28–29. The ALJ's decision became the final decision of the

Commissioner when the Appeals Council denied Wesenick's request for review on May 27, 2016. R. 1. Thereafter, Wesenick commenced this action for judicial review.

## LEGAL STANDARD

On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Agency's own rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Wesenick's sole argument in this case is that the ALJ erred by failing to include limitations attributed to her migraines in the RFC. An RFC is an administrative assessment describing the extent

to which an individual's impairments may cause physical or mental limitations or restrictions that could affect her ability to work. SSR 96–8p, 1996 WL 374184, at *2. The RFC represents "the maximum a person can do—despite his limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting SSR 69–8p). In forming the RFC, an ALJ must review all of the relevant evidence in the record, including any information about the claimant's symptoms and any opinions from medical sources about what she can still do despite her impairments. SSR 96–8p at *2.

Wesenick asserts that although the ALJ found her migraines to be a severe impairment, he erred by failing to include limitations regarding her migraines in the RFC. She contends that the ALJ failed to provide a narrative or articulate a sufficient rationale for rejecting any associated limitations. Pl.'s Br. at 6, ECF No. 11. Wesenick also argues the ALJ did not include any limitations created by her migraines, such as missing days from work, working with computer screens, or working with fluorescent lighting that may be caused by her migraines. *Id.* at 10. Because of the ALJ's failure to include migraine-related limitations in her RFC, Plaintiff argues the Commissioner's decision should be reversed and the case remanded.

The problem with Wesenick's argument is that she never mentioned any limitations caused by her migraines. In fact, she never mentioned migraines in her testimony at the hearing until her attorney asked about it after the ALJ had completed his questions. R. 99. Her primary complaint was back pain and problems with her left arm, hand and her MS. R. 85–98. When her attorney asked about her migraines, Wesenick recounted that sometime last month, which would have been September 2014, "I spent twice going in and getting injections and fluid, because I had such a bad migraine that I was dehydrated and that my head hurt with the migraine for three days." R. 99. She

4

testified in response to counsel's further question about the frequency of her migraines over the first ten months of the year that she had migraines "two or three days every month that I'm - - you know, have to lie flat, try not to do anything with the leg." *Id.* She offered no testimony about how her migraines allegedly impacted her prior to her date last insured of June 30, 2012.

The Adult Function Report Wesenick completed on January 23, 2013, was likewise almost silent as to any impact her migraines had on her ability to function. The only mention of migraines was in response to the question "Do the illnesses, injuries, or conditions affect your sleep?" Wesenick answered: "When my back is bad it keeps me up. I also get migraines when the M.S. is bad also." R. 259. To the question "How do your illnesses, injuries, or conditions limit your ability to work?", she responded: My MS sometimes limits me in doing many things. Do [sic] to my balance My back is very painful. I can't lift + bend + stretch like before. I can only stand for so long + my back starts to hurt." R. 258. The ALJ found Wesenick's complaints concerning her back pain less than fully credible, a finding Wesenick does not challenge.

The regulations require that the ALJ "consider all *allegations* of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96–8p at *5 (emphasis added). Stated differently, if a plaintiff does not allege that her impairment causes a limitation or restriction, the ALJ cannot find that there is a limitation or restriction:

> When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.

SSR 96–8p at *1. In short, the regulations do not require an ALJ to conjure limitations for a claimant merely because she has a severe impairment.

5

Wesenick primarily relies on the medical evidence in the record to demonstrate that her migraines were severe and required accommodations in the RFC. But the records do not contain any reference to a limitation created by her migraines. The medical record reveals that Wesenick had complained of recurrent migraine headaches since 2002. R. 603. In 2005, she said she had headaches about once a month, and she described them as throbbing or pounding associated with an aura of blurred vision, nausea, photophobia, and phonophobia. R. 607. At that time, she took amitriptyline and topiramate to relieve them. *Id.* In 2006, Wesenick complained of getting one headache every four to five months. R. 605. Her physician determined her headaches where a side effect of taking Imitrex. When she added Topamax to her medication regimen, the frequency of her headaches had improved. *Id.* In October 2009, Wesenick noted at an appointment regarding her complaints of back pain that her headaches have recently been under control. R. 490.

On March 12, 2010, Wesenick called the Weston Center complaining about daily headaches. R. 489. She reported that the headaches wrap around her head. Her physician advised that she either go to the Walk-In Clinic or emergency department for injection treatment. *Id.* The following day, Wesenick presented to the Aspirus Walk-In Clinic to receive an injection of Compazine and Benadryl to break the headache's cycle. *Id.* Later that week, Wesenick presented for a follow-up appointment with her physician to determine whether her headaches were migraines. R. 487. She claimed she generally got two headaches a month. *Id.* Her physician prescribed four tablets of Fioricet and discussed the risks of drug rebound with higher doses of Fioricet. R. 487–88. He advised that she only take this medication when her headaches are their most severe. R. 487.

On May 11, 2010, Wesenick called the Wausau Center claiming her headaches had increased. R. 485. She indicated her headaches last for two to three days and that Fioricet did not provide any

6

relief. Although she reported slight nausea, she did not have vomiting or blurred or double vision. *Id.* The same day, Wesenick presented for injection treatment at the Infusion Center. *Id.* She rated her headache as a 2 or 3 out of 10. R. 486. After she received IV treatment, she was instructed to call her doctor with any further questions or concerns. *Id.* One week later, Wesenick followed-up with her physician on a number of issues, such as her depression, MS, coagulopathy, dyslipidemia, headaches, gastroesophageal reflux disease (GERD), alopecia, and varicose veins. R. 382–83. As to her headaches, she reported they occur on the left side and cause her face to feel swollen. R. 383. She claimed she gets headaches every other month and takes nortriptyline every day to relieve them. *Id.* Her physician instructed Wesenick to participate in the Diamond Pain Center Diet to reduce her headaches and also increased her dosage of nortriptyline. R. 385. In September 2010, Wesenick complained that she continued to struggle with headaches and lower back pain due to muscle tension. R. 763.

On March 23, 2011, Wesenick claimed she gets one migraine each month and takes Fioricet to relieve them. R. 478. Her physician instructed her that taking Fioricet more than two or three times a month could result in drug rebound headaches. *Id.* On August 2, 2011, Wesenick presented for an annual physical with a number of issues, including MS, chronic low back pain, deep vein thrombosis, chronic pain, GERD, nasal obstruction, and migraine headaches. R. 367. She indicated she talked with a neurologist about her headaches and that he is "very sure" that they are migraines. *Id.* Wesenick stated her headaches occur on a monthly basis, which seem to occur during ovulation. R. 367, 369. She noted they were "getting a little bit worse." R. 367–68. Wesenick reported she occasionally took Fiorinal to treat them, and her physician suggested taking prophylactic medication instead. R. 368.

On June 22, 2012, Wesenick called the Weston Center complaining about increased headaches. R. 466. Dr. Biswas advised Wesenick she could try OTC therapy for the weekend or report to a walk-in clinic if she felt they were severe enough. R. 466. On June 27, 2012, Wesenick reported to her doctor for back spasms. Her physician noted she had a history of migraines and instructed her to continue taking at most four butalbital tablets each month for her "breakthrough headaches." R. 464–65.

The following year, on June 11, 2013, Wesenick presented to the emergency department with her mom to be treated for anxiety. R. 1049. Two days later, Wesenick presented to the emergency department complaining about a constant headache lasting two to three days. R. 1039. The physician noted she was very vague about the cause of her migraines. She only stated, "they just hit." *Id.* Wesenick reported she did not take Fioricet for this migraine because it had not helped her in the past. R. 1040. The physician ordered a CT scan of her head and an MRI of her brain, though she refused the MRI. R. 1044. The CT scan was negative for bleeding or midline shift. R. 1046. The physician observed that when Wesenick was treated for anxiety two days prior, she did not mention a headache during that visit. R. 1044. The doctor noted her headache appeared to be tension-related and prescribed Fioricet as needed. He instructed that she follow-up with her primary care physician for reevaluation. R. 1045.

On July 26, 2014, Wesenick presented to Aspirus with a chief complaint of headaches. R. 1011. She noted she had the headache for the last few days in the left occipital region of her head, which was very unusual for her. She reported an increased tingling sensation in her left lower extremity, which she attributed to her MS. *Id.* A CT scan of her head did not reveal evidence of a mass or abnormal fluid collection. R. 1017. Wesenick was given one gram of IV Solu-Medrol and

8

placed on Decadron. R. 1011. Her doctor recommended she follow-up with her neurologist, and she was discharged in an otherwise stable medical condition. R. 1015.

To summarize, the medical records indicate that at various times over the several years preceding and following her date last insured, Wesenick complained of one to two migraines a month that could last up to three days and that she takes Fioricet or other medications to relieve them. They contain no reference to Wesenick complaining of a limitation caused by her migraines or one that was acknowledged by her treating physicians. It should also be noted that she appears to have had an application for DIB pending throughout most of this time.

The ALJ relied upon Wesenick's medical history, reports of daily activities, medical source statements, symptoms, and lay evidence to assess her RFC. He thoroughly summarized the medical record with respect to all of Wesenick's impairments. As to her migraines specifically, he mentioned that she reported to her neurologist that she had one to two migraine headaches monthly, for which she takes Fioricet, but also uses Vicodin sometimes for chronic pain. R. 26. The ALJ concluded Wesenick's testimony and allegations were inconsistent with the medical evidence of record and found her to be only partially credible. R. 25. He also determined the statements made by Wesenick's husband, that she could cook, clean, shop, drive, and lift up to twenty pounds, sit in a lawn chair for an hour, and walk up to half a mile, were generally consistent with the demands of light work. *Id.*

Finally, the ALJ afforded the state agency physicians "significant weight" and adopted the limitations assigned by the physicians. R. 27. He noted that in adopting their opinions, he gave Wesenick the "benefit of the doubt" because her amended onset date shows she required less limitations than the physicians opined. R. 27–28. Therefore, he found Wesenick was capable of

performing light work except that she could occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and should avoid all exposure to hazards. R. 24. Substantial evidence supports the ALJ's RFC finding, and he adequately explained how he arrived at that conclusion. Without any allegations from Wesenick or any medical source that her migraines created any limitations or restrictions upon her functional capacity, the ALJ did not err in failing to create limitations of his own.

## CONCLUSION

For the above reasons, the decision of the Commissioner is affirmed. The Clerk will enter judgment accordingly.

Dated this   18th   day of September, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
